IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL BAKER, et al.,                )      2:04-cv-0549-GEB-GGH
                                       )
            Plaintiffs,                )      ORDER
                                       )
v.                                     )
                                       )
ARAMARK UNIFORM AND CAREER             )
APPAREL, INC., et al.,                 )
                                       )
            Defendants.                )
                                       )

          Defendants move for summary judgment or partial summary
judgment on Plaintiffs' claims.[1]  Plaintiffs oppose the motion.

                              BACKGROUND

          Plaintiffs Eley, Andrews, Vargas, and Baker, former
employees of Defendant Aramark Uniform and Career Apparel, Inc.
("Aramark"), bring this action against Aramark, and several of its
employees, Defendants Bickerton, Clowes, Koch, Polifka, and Velasco.
Plaintiffs assert claims against Aramark and its employees for race
discrimination under 42 U.S.C. § 1981 ("§ 1981").  Plaintiffs also
claim Aramark violated Title VII of the Civil Rights Act of 1964, 42

---

[1]      Plaintiff Eley has withdrawn his 42 U.S.C. § 1981 claim
against Defendant Lewis. (Pls.' Opp'n to Defs.' Mot. for Summ. J.
("Opp'n") at 35.) Plaintiff Vargas has withdrawn his § 1981 claim
against Defendants Bickerton and Lewis. (Id. at 59.) As no claims
remain against Defendant Lewis, he is dismissed from this action.

U.S.C. §§ 2000e et seq. ("Title VII"), by maintaining a hostile racial work environment, retaliating against Plaintiffs, and discharging and/or constructively discharging Plaintiffs for complaining about alleged race discrimination.  Plaintiff Andrews also claims Aramark violated the Age Discrimination in Employment Act ("ADEA").

DISCUSSION[2]

Defendants argue that several of the alleged incidents of discrimination are "time-barred" and should not be considered in evaluating Plaintiffs' discrimination claims.  (Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 28.)  Plaintiffs may only allege discrimination based on incidents that occurred within 300 days before the filing of a grievance with the Equal Employment Opportunity Commission ("EEOC").  Sandoval v. Saticoy Lemon Ass'n, 747 F. Supp. 1373, 1384 n.10 (C.D. Cal. 1990); see also 42 U.S.C. § 2000e-5(e)(1).  However, "consideration of the entire scope of a hostile [racial] work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).  Further, otherwise time-barred incidents may be part of the claim where they are "part of one unlawful employment practice giving rise to a single claim."  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 n.6 (9th Cir. 2004) (citation omitted).

---

[2]  "The standards applicable to motions for summary judgment are well known, see, e.g., Rodgers v. County of Yolo, 889 F. Supp. 1284 (E.D. Cal. 1995), and need not be repeated here."  Reitter v. City of Sacramento, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

I.  Hostile Racial Work Environment

Defendant Aramark moves for summary judgment on Plaintiffs' hostile racial work environment claims brought under 42 U.S.C. § 2000e.  "To prevail on a hostile workplace claim premised on . . . race . . . a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).  "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages. . . .  The defense [hereinafter referred to as the Faragher-Ellerth defense] comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); see also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).  "Where a 'hostile environment' claim rests on . . . race-based comments, we think that the plaintiff, to show that he or she perceived the 'environment' as 'hostile,' must at least have been aware of those comments, even if the person making them did not make them directly to the plaintiff."  Bradshaw v. Golden Road Motor Inn, 885 F. Supp. 1370, 1381 (D. Nev. 1995).

A.  Eley

Aramark contends, "In Plaintiff Eley's case, . . . all of the elements of the Faragher-Ellerth affirmative defense are

satisfied." (Defs.' Mot. at 31.)  Aramark argues, "Eley was never
fired, never demoted, never had his salary reduced, never had his
route changed or job duties altered, and never had any 'tangible'
adverse employment action taken against him."  (Id. at 31-32.)
However, Eley declares he suffered adverse employment action because
after he "called the company 800 number to complain about workplace
violence," "Polifka called [Eley] into his office [and] proceeded to
berate [him] and to tell [him] how stupid [he] was for calling the
company 800 number."[3] (Eley Decl. ¶¶ 13-14; Pls.' Statement of
Disputed Facts ("SDF") at ¶¶ 133-34.)  Further, Baker declares that
"Polifka . . . spoke to [him] about Eley's call to the company's 800
number" and ordered Baker to "fire tha[t] nigger, now."[4] (Baker Decl.
¶¶ 19-20; SDF ¶ 137.)  Baker declares that Polifka "made it clear that
if [Baker] did not 'find something' on which to fire Eley, [Baker]
would also be out of a job." (Baker Decl. ¶ 20; SDF ¶ 137.)  Since,
there is a genuine issue of material fact whether Eley was subject to
tangible adverse employment action, the motion based on the Faragher-
Ellerth affirmative defense is denied.

        Aramark next argues that Eley's hostile racial work
environment claims must be dismissed because none of the alleged
harassing conduct was based on his race and the alleged incidents were
not "sufficiently severe and pervasive so as to alter the conditions
of employment and create a hostile working environment[.]" (Defs.'

---

[3]     Defendants object to the admissibility of this statement
based on lack of foundation and hearsay. Eley alleges Polifka
"yelled and screamed" directly at him, so Eley has personal
knowledge. Polifka is a party-opponent so his statements are
admissible under Federal Rule of Evidence 801(d)(2)(A). The
objections are overruled.

[4]     Defendants' hearsay objection is overruled. See id.

Mot. at 32-35.)  "There were only two occasions on which Eley heard
anyone make any comment which he perceived as a slur or derogatory to
African Americans. . . ."  (Id. at 35.)  Eley counters that he "was
aware, from almost daily discussions with Baker, that he was routinely
referred to as a 'nigger' by branch manager Polifka and accounts
manager Greg Lewis."  (Opp'n at 27.)  Further, Russ Hall, a co-worker
of Eley, declares that he heard "Polifka calling Rich Eley a 'jungle
bunny.'"[5]  (Hall Decl. ¶ 7; SDF ¶ 143.)  Since Plaintiffs have shown a
genuine issue of material fact whether racially derogatory comments
were routine and whether Eley was aware of them, summary judgment on
Plaintiff Eley's hostile racial work environment claim is denied.

### B.  Andrews

Aramark moves for summary judgment on Andrews's eighth claim
for hostile racial work environment, contending that the Faragher-
Ellerth affirmative defense bars the claim.  Aramark argues it "had a
well-defined policy prohibiting and correcting any harassment as
outlined in the Employee Handbook, the Harassment Policy statement,
and the Unite! Collective Bargaining Agreement.  Aramark also had an
Employee Hotline 800 number to report any unlawful conduct."  (Defs.'
Mot. at 42; Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 4-7.)
Aramark contends, "Andrews called the Company Employee Hotline . . .
but did not mention anything about his race   . . . ."  (SUF ¶ 133.)
Andrews avers that he "complained to Polifka about use of racial
remarks in the workplace,"  (SDF ¶ 100; Andrews Decl. ¶¶ 6, 11), and
that he "spoke on numerous occasions to district manager Baker. . . ."
(SDF ¶ 102; Andrews Decl. ¶¶ 5, 8.)  Baker declares that he "spoke to

_____

[5]  Defendants' hearsay objection is overruled.  See supra
note 3.

5

both Polifka and general manager Don Clowes about Bickerton's
mistreatment of Andrews [and] reported the discriminatory conduct to
both Nancy Meyers and Doug Battista of Human Resources."[6]   (SDF ¶ 103;
Baker Decl. ¶¶ 8-12, 55, 61.)   Since Plaintiffs adequately aver that
Andrews did not "fail[] to take advantage of any preventive or
corrective opportunities provided by the employer or to avoid harm
otherwise," Aramark's motion based on the Faragher-Ellerth affirmative
defense is denied.   Burlington Indus., Inc., 524 U.S. at 765.

        Aramark argues, "Andrews['s] claim fails as a matter of law
because he was not singled out or treated any differently in
comparison to other Warehousemen."   (Defs.' Mot. at 39.)   Andrews
counters, declaring that "Bickerton's conduct towards [him] was . . .
extreme, and . . . much worse than how he treated the other
warehousemen [and that while Bickerton] sometimes joked about with the
other employees, he was consistently mean-spirited with [Andrews]."[7]
(Andrews Decl. ¶ 4; SDF ¶ 90; see also SDF ¶¶ 91-94.)   A genuine issue
of material fact exists whether Andrews received different treatment.

        Aramark argues, "Andrews'[s] discipline was legitimate and,
thus, cannot constitute harassing behavior [to support a hostile
racial work environment claim] . . . ."   (Defs.' Mot. at 41.)   It is

_____

[6]    Defendants object to this evidence based on lack of
personal knowledge and lack of foundation. The statement references
Baker's declaration and is supported thereby. Baker has personal
knowledge of his conduct and the foundation is proper. The
objections are overruled.

[7]    Defendants object to this evidence based on lack of
foundation, hearsay, and impermissible opinion. Andrews has
properly laid the foundation for his knowledge about Bickerton's
conduct. Bickerton's statements are excepted from hearsay as
admissions of a party-opponent under Federal Rule of Evidence
801(d)(2)(A). Andrews's opinion about Bickerton's conduct is a
proper lay opinion under Federal Rule of Evidence 701.

undisputed that "Bickerton assigned the task of locking the facility, the trucks, and the fence surrounding the trucks to the Warehouseman who was responsible for unloading the trucks and worked the last shift in the warehouse ('unloader')," and that "Andrews was an unloader at the new facility." (SUF ¶¶ 118, 120.) Bickerton declares that Andrews "failed [to] follow his job duties of locking the rear door and rear gate," "left a truck unlocked with the keys inside," and "left a depot door unlocked." (Bickerton Decl. ¶¶ 14, 18, 20, 22, 52; SUF ¶¶ 127-31.) Andrews counters, declaring that he "did not fail to follow his job duties."[8] (Pls.' Resp. to Defs.' SUF ¶¶ 127-31; Andrews Decl. ¶¶ 17-20.) Bickerton also declares, "Andrews [once] called in late to work, but never showed up to work at all," but Andrews counters that he "came into work."[9] (Bickerton Decl. ¶ 14; SUF ¶ 127; Andrews Decl. ¶ 7.) A genuine issue of material fact therefore exists as to whether the disciplinary actions against Andrews were legitimate.

Aramark also argues, "[a] single [racial] comment [heard directly by Andrews] over Andrews'[s] five years of employment with Aramark is not sufficiently severe, frequent, threatening, or humiliating and did not alter the conditions of Andrews'[s] employment to constitute harassment." (Defs.' Mot. at 41.) Andrews counters, declaring that "During the week before terminating [him], Mr. Bickerton . . . was cursing at [him], slamming and throwing pallets

[8]     Defendants object that Plaintiffs have violated Local Rule 56-260(b) by failing to simply admit or deny whether the fact is undisputed. This objection is overruled.

[9]     This objection is overruled. See id.

and saying, 'You cock-sucking black ass.'"[10]   (Andrews Decl. ¶ 25; SDF ¶ 123.)  Further, Baker declares that, "On other occasions, when Baker had gone to speak to Bickerton on Andrews'[s] behalf, Bickerton said 'fuck the nigger' in reference to Andrews and called him 'nigger' [and] Baker informed Andrews about these remarks by Bickerton."[11] (SDF ¶ 104; Baker Decl. ¶¶ 11, 37, 41-43, 46; Andrews Decl. ¶ 10.) Since a genuine issue of material fact exists whether the alleged conduct was harassing or sufficiently severe or pervasive, Aramark's motion for summary judgment on Andrews's hostile racial work environment claim is denied.

### C.  Vargas

Aramark argues that Vargas's claimed incidents of hostile racial work environment concerning racial name-calling, reclassification to a non-commissioned driver, and employment termination are not actionable.  (Defs.' Mot. at 42-44.)  Vargas declares that he was "called names by Aramark management," including "Vato," "Beaner," "Mexican," "wetback," "stupid Mexican," and "bean dip,"[12] and that "[t]he name-calling went on constantly – almost every day."[13]  (Vargas Decl. ¶¶ 4, 6; SDF ¶¶ 158-62.)

---

[10]   Defendants' hearsay objection is overruled. See supra note 7.

[11]   Defendants' hearsay objection is overruled. See supra note 7.

[12]   Defendants object based on hearsay. The objection is sustained in part since the statements admitted are limited to those made by party-opponents. See Fed. R. Evid. 801(d)(2)(A).

[13]   Defendants object based on vagueness, but this is a permissible lay opinion about the frequency of comments.  See Fed. R. Evid. 701.  The objection is overruled.

Aramark argues, "Vargas'[s] participation in conduct similar to the allegedly harassing conduct precludes him from showing 'unwelcomeness' or 'severity.'" (Defs.' Mot. at 43; see Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 966 (8th Cir. 1999) (finding conduct not unwelcome where "undisputed evidence showed that [plaintiff] engaged in behavior similar to that which she claimed was unwelcome and offensive").)  Vargas acknowledged, "At his deposition, McKinley [, a co-worker,] claimed Vargas also called him 'Mexican,' 'half-breed,' and 'spic,'" but declares that he "never called anyone racial names." (Vargas Decl. ¶¶ 10, 14; SDF ¶ 167.)  A genuine issue of material fact therefore exists on whether Vargas participated in racial name-calling so as to foreclose his claim that racial name-calling was unwelcome.

Aramark next argues, "Vargas was reclassified [to a non-commissioned driver] after his sales declined, he refused to submit solicitation sheets and [he] claimed he did not have to sell." (Defs.' Mot. at 43-44; see SUF ¶¶ 147-54.)  Vargas counters, declaring that "Koch told [him] he was on [his] way to being 'managed' out of . . . Aramark[; t]he ostensible reason for the demotion was a 'drop in sales' however other Aramark drivers' sales had dropped more than [Vargas's] and they were not demoted."[14]  (Vargas Decl. ¶ 32; SDF

---

[14]   Defendants object to Koch's statements based on hearsay and to the statement about other drivers based on lack of foundation, impermissible lay opinion, and speculation.  Because Koch is a party-opponent, the hearsay objection is overruled. Further, Andrews has laid the foundation to render an opinion about his co-workers and he gives an opinion that is: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule

1   ¶ 186.)  Vargas further declares that he "never said [he did] not have

2   to sell."[15]   (Vargas Decl. ¶ 31; Pls.' Resp. to Defs.' SUF ¶ 153.)  A

3   genuine issue of material fact exists whether Vargas's

4   reclassification was legitimate.

5          Finally, Aramark argues "Vargas'[s] dishonesty prompted the

6   circumstances and caused his employment termination. . . ."  (Defs.'

7   Mot. at 44; see SUF ¶¶ 161-67.)  Aramark contends, "Vargas called in

8   sick," but "Koch, Velasco, and Lewis went to the Bishop Manogue

9   championship softball game" and "observed [Vargas] in a coach uniform,

10  in the team dugout, and on the field during huddles."  (SUF ¶¶ 163-

11  165.)  Vargas counters, declaring that he "did not . . . do any

12  coaching whatsoever" and "[a]lthough [he] was feeling somewhat better,

13  [he] was still too sick to drive [his] morning shift."  (Vargas Decl.

14  ¶¶ 44-45, 42; Pls.' Resp. to Defs.' SUF ¶ 165; SDF ¶ 197.)  A genuine

15  issue of material fact exists on these matters and whether his

16  termination was discriminatory.

17         Since genuine issues of material fact exist as to all of

18  Aramark's asserted non-discriminatory reasons for racial name-calling

19  and adverse employment action, Aramark's motion for summary judgment

20  on Vargas's hostile racial work environment claim is denied.

21         D.  Baker

22         Aramark moves for summary judgment on Baker's third claim

23  for hostile racial work environment, arguing, "There is absolutely no

24  evidence that the work environment at the Reno Depot was hostile to

25
    702."  Fed. R. Evid. 701.  The objections are overruled.
26
           [15]   Defendants object that although Vargas did not say those
27  exact words, he said something to that effect. This is a question
    of fact. The objection is overruled.
28

1  Caucasian employees.  Baker thus cannot claim a hostile work
2  environment based upon his race." (Defs.' Mot. at 44.)  Baker
3  acknowledges he "is a white male." (SDF ¶ 1.)  Baker argues
4  "harassment as retaliation" is actionable. (Opp'n at 77-78; see,
5  e.g., Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).)  Hostile
6  work environment can constitute adverse employment action for a
7  retaliation claim.  Drake v. Minn. Mining & Mfg. Co., 134 F.3d 878,
8  886 (7th Cir. 1998).  However, Baker has failed to show how the
9  alleged adverse employment action constituted a hostile racial work
10  environment.  Therefore, Aramark's motion for summary judgment on
11  Baker's hostile racial work environment claim is granted.

12  III.  Retaliation and Discrimination

13  Aramark moves for summary judgment on Plaintiffs' claims of
14  retaliation under 42 U.S.C. § 2000e.  "To establish a prima facie case
15  of retaliation under Title VII, '[t]he plaintiff must show (1) that
16  [he] was engaging in a protected activity, (2) that [he] suffered an
17  adverse employment decision, and (3) that there was a causal link
18  between the protected activity and the adverse employment decision.'"
19  Tarin v. County of Los Angeles, 123 F.3d 1259, 1264 (9th Cir. 1997)
20  (quoting E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir.
21  1989)).  Alternatively, "A plaintiff may establish a *prima facie* case
22  . . . by presenting actual evidence, direct or circumstantial, of the
23  employer's discriminatory motive.  When a plaintiff . . . seeks to
24  establish a *prima facie* case through the submission of actual
25  evidence, very little such evidence is necessary to raise a genuine
26  issue of fact regarding an employer's motive; any indication of
27  discriminatory motive--including evidence as diverse as the

28

11

defendant's reaction, if any, to plaintiff's legitimate civil rights activities . . . may suffice to raise a question that can only be resolved by a factfinder." <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1009 (9th Cir. 1985) (citation omitted).  "If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision.  Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994).

### A.  Eley

Aramark argues, "Eley cannot establish . . . the elements of the requisite <u>prima facie</u> case." (Defs.' Mot. at 46.)  Aramark contends "Eley cannot demonstrate that he engaged in any 'protected conduct.'"  (<u>Id.</u>)  Protected conduct is "oppos[ing] any practice made an unlawful employment practice by [Title VII]. . . ." 42 U.S.C. § 2000e-3(a).  Aramark argues, "[Eley's] August 16, 2002 call to the Aramark Employee Hotline is not protected conduct because he was not complaining of any 'unlawful employment practice' and he admitted this call had nothing to do with his race or any perceived discrimination." (Defs.' Mot. at 46.)  Aramark contends Eley's "only complaint . . . was about [a derogatory comment made by Defendant Lewis] on August 28, 2002[; and that Eley's] "'opposition' to such remark is not protected conduct."  (<u>Id.</u>)  To be protected, "the opposition must be directed at an unlawful employment practice of the employer, not an act of discrimination by a private individual." <u>Silver v. KCA, Inc.</u>, 586

F.2d 138, 141 (9th Cir. 1978).  Aramark does not prevail on its
argument, however, because Baker declares that when he spoke to
Polifka and Clowes about Eley being extremely embarrassed, humiliated,
and uncomfortable with an alleged racial remark made by Lewis, Polifka
again told [Baker] that he must fire Eley or [Baker] would be
fired."[16]  (Baker Decl. ¶¶ 54-55; SDF ¶¶ 139-40.)  Therefore, a
genuine issue of material fact exists as to whether Eley engaged in
protected conduct.

Aramark argues, "Second, Eley cannot establish that he was
subjected to any 'adverse employment action' within the statutory
period."  (Defs.' Mot. at 47.)  Specifically, Aramark argues that
"Eley cannot prove constructive discharge."  (Id. at 38.)
"[C]onstructive discharge exists when 'working conditions would have
been so difficult or unpleasant that a reasonable person in the
employee's shoes would have felt compelled to resign.'"  Nolan v.
Cleland, 686 F.2d 806, 813 (9th Cir. 1982) (quoting Bourque v. Powell
Elec. Mfg. Co., 617 F.2d 61 (5th Cir. 1980).  "A reasonable person
would certainly resign employment after being ordered to leave."
Welch v. Univ. of Tex. & Its Marine Science Inst., 659 F.2d 531, 534
(5th Cir. 1981).  Aramark argues, "Eley went about an orderly process
over a period of several months of inquiring about other employment
[and there exists] no evidence of 'intolerable' conditions at the time
of his resignation . . . ."  (Defs.' Mot. at 39; SUF ¶ 74.)  Eley
counters, arguing that "Polifka told [Baker] that he must fire Eley or

---

[16]   Defendants' objection to Eley's statement about being
humiliated based on impermissible opinion is overruled since Eley
is competent to render an opinion about his own feelings.
Defendants' hearsay objection is also overruled. See supra note 3.

[Baker] would be fired."[17]   (Baker Decl. ¶¶ 54-55; SDF ¶ 140.)
Further, Eley declares, "Everyday [he] would go into work sick with
worry [knowing that] any day at work could turn out to be [his] last
[and feeling] there was nothing he could do to save his job."[18]   (Eley
Decl. ¶ 33; SDF ¶ 151.)   This threat of imminent termination may be
tantamount to "being ordered to leave."  Welch, 659 F.2d at 534.
Accordingly, a genuine issue of material fact exists as to whether "a
reasonable person in [Eley's] shoes would have felt compelled to
resign" and as to whether Eley was subject to adverse employment
action.  Nolan, 686 F.2d at 813.

        Aramark argues, "Eley cannot prove the final essential
element of a prima facie case – causal connectedness between protected
conduct and adverse action. . . .   The passage of [seven and one-half
months] between the protected conduct and the adverse action creates a
presumption that no causal connection exists."  (Defs.' Mot. at 47
(citing Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992)).)
However, "[T]he length of time, considered without regard to its
factual setting, is not enough by itself to justify a grant of summary
judgment."  Coszalter v. City of Salem, 320 F.3d 968, 977-78 (9th Cir.
2003).  Here the factual setting includes Polifka's response to
Baker's bringing Eley's complaint about the Randy Moss-watermelon
comment to Polifka's attention: "Polifka again told [Baker] that he

        [17]   Defendants' hearsay objection is overruled.  See supra
note 3.

        [18]   Defendants object based on opinion, lack of personal
knowledge, speculation, and lack of foundation. Eley has personal
knowledge of his own feelings, has laid the foundation for them,
and is competent to render an opinion thereof. This portion of the
statement is not speculative. The objections are overruled.

must fire Eley or [Baker] would be fired."[19]   (SDF ¶¶ 139-40.)   And,
Eley declares that his "work environment became increasingly
intolerable from the time that Baker told [him] he had to fire [him]
and [he] learned [he] was being called racial names behind [his]
back."[20]   (Eley Decl. ¶ 32; SDF ¶ 150.)   Therefore, a genuine issue of
material fact exists on whether there is a causal connection between
Eley's complaints and the hostile racial work environment that led to
Eley's constructive discharge.

        Finally, Aramark argues, "Aramark has established
legitimate, non-discriminatory/non-retaliatory reasons for the actions
it took towards Eley" because, for example, "Eley <u>admitted</u> throwing a
roll-towel and hitting Andrews in the back of the head."   (Defs.' Mot.
at 48.)   However, Plaintiffs' declarations regarding discriminatory
motive discussed above, including Polifka's direction to Baker to "get
out on [Eley's] route, and . . . find something to fire him," are
sufficient to raise a question of pretext.[21]   (Baker Decl. ¶ 19; SDF
¶ 24).   Where as here, "a plaintiff has established a prima facie
inference of disparate treatment through . . . evidence of
discriminatory intent, he will necessarily have raised a genuine issue
of material fact with respect to the legitimacy or bona fides of the
employer's articulated reason for its employment decision."   <u>Lowe</u>,

---

        [19]   Defendants' hearsay objection is overruled.   <u>See</u> <u>supra</u>
note 3.

        [20]   Defendants object based on opinion, speculation, and lack
of foundation. Eley is competent to render an opinion about his
work environment, and his opinion is not speculation. The
objections are overruled.

        [21]   Defendants' hearsay objection is overruled.   <u>See</u> <u>supra</u>
note 3.

15

1  775 F.2d at 1009.  Since a genuine issue of material fact exists
2  whether Aramark employees terminated Eley in response to his
3  complaints about discrimination, Aramark's motion for summary judgment
4  on Eley's claim for retaliation is denied.

5       B.  Andrews

6       Aramark argues that Andrews "cannot establish a prima facie
7  case of retaliation because the undisputed evidence shows he did not
8  engage in any 'protected conduct' . . . ."  (Defs.' Mot. at 49.)
9  Aramark also argues even if "protected conduct" is involved,
10 "[Andrews's] retaliation claim must still fail because he cannot
11 establish a causal connection between any protected conduct and his
12 termination."  (Id.)  Andrews counters that, "Any indication of
13 discriminatory motive . . . may suffice to raise a question that can
14 only be resolved by a factfinder."  (Opp'n at 23 (quoting Lowe, 775
15 F.2d at 1009).)  Baker declares that when he went to speak to
16 Bickerton on Andrews's behalf, "Bickerton said, 'fuck that nigger' in
17 reference to Willie Andrews" and he "heard Polifka . . . and Bickerton
18 . . . freely use the 'nigger' word about . . . Andrews."[22]  (Baker
19 Decl. ¶¶ 37, 46; SDF ¶ 104.)  Since this evidence creates a genuine
20 issue of material fact on whether a racially discriminatory motive for
21 Andrews's termination existed, Aramark's motion for summary judgment
22 on Andrews's retaliation claim is denied.

23      C.  Vargas

24      Aramark seeks summary judgment on Vargas's eighteenth and
25 nineteenth claims for discrimination and retaliation under 42 U.S.C.

26 ──────────

27      [22]  Defendants' hearsay objection is overruled.  See supra
28 notes 3, 10.

16

§ 2000e.   Aramark argues, "[As to Vargas's reclassification to a non-commissioned position,] neither his grievance [with his Union] nor his letters to Aramark . . . claim that he was being treated unfairly 'because of' his race or national origin."  (Defs.' Mot. at 57.) Vargas counters declaring that "In late October 2003, Mike Baker filed a complaint with the EEOC [and Vargas] was listed as a witness that would be willing to give a statement and support him as a witness."[23] (Vargas Decl. ¶ 28; SDF ¶ 182.)  Vargas further declares that "On or about November 19, 2003, . . . Clowes came to the Reno office from Sacramento and inquired how much [Vargas] was earning.  When [Vargas] told him, Clowes pronounced, 'That's too much money.  Your route should be cut.'"[24]  (Vargas Decl. ¶ 29; SDF ¶ 184.)  Vargas also declares that "On or about November 21, 2003, . . . Koch summoned [Vargas] into his office and presented [him] with a notice that [he] would be demoted . . . ."[25]  (Vargas Decl. ¶ 32; SDF ¶ 186.)  Further, the proximity of events can "support an inference of causation." Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004). Therefore, a genuine issue of material fact exists as to whether Vargas's reclassification was related to his race.

---

[23]   Defendants object based on relevance. Vargas's listing as a witness in a charge of discrimination is highly relevant because Vargas suffered adverse employment action shortly thereafter. The objection is overruled.

[24]   Defendants' hearsay and relevance objections are overruled. Clowes's statements are excepted from hearsay as admissions of a party-opponent under Federal Rule of Evidence 801(d)(2)(A) and the statements are relevant evidence of adverse employment action.

[25]   Defendants' hearsay objection is overruled. See supra note 14.

17

1    Aramark also argues, "Vargas fails to demonstrate the
2  requisite causal connection between his complaint of alleged
3  discrimination in January 2004 and his termination four and one-half
4  months later in May 2004." (Defs.' Mot. at 50.)  However, Vargas
5  filed a charge of discrimination with the EEOC only three months
6  before his termination and filed this lawsuit roughly two months
7  before his termination.  (Opp'n at 56; SUF ¶ 12; Complaint (filed
8  March 19, 2004); SDF ¶ 208.)  "We have held that events occurring
9  within similar intervals of time are sufficiently proximate to support
10  an inference of causation."  Thomas, 379 F.3d at 812 (citing Yartzoff
11  v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding less than
12  three months proximity sufficient evidence of a causal link)).

13    Further, Aramark argues that Vargas's "dishonesty in calling
14  in sick" was an "intervening event [that] precludes any finding of a
15  causal connection." (Defs.' Mot. at 50.)  Vargas counters, declaring
16  that he was "still too sick to work"[26] (Vargas Decl. ¶ 42; SDF ¶ 197),
17  and that he "was never asked to provide verification from [his] doctor
18  that [he] was sick."[27]  (Vargas Decl. ¶ 50; SDF ¶ 208.)  Since a
19  genuine issue of material fact exists as to whether Vargas's
20  termination for dishonesty was pretextual, Aramark's motion for
21  summary judgment on Vargas's claims for discrimination and retaliation
22  is denied.

23

24    [26]   Defendants' lack of foundation and improper lay opinion
objections are overruled.  Vargas has averred his substantial
25  experience as a successful driver for Aramark and is competent to
render an opinion about his ability to perform his job duties.
26

27    [27]   Defendants' relevance objection is overruled.  The
statement is relevant to whether Aramark sought to prove Vargas's
28  dishonesty, as required by the Collective Bargaining agreement.

D.  Baker

Aramark argues, "Baker cannot demonstrate the existence of a causal connection between his alleged protected conduct and [his] termination, and, thus, cannot establish a prima facie case of retaliation."  (Defs.' Mot. at 52.)  Baker counters "the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two."  (Opp'n at 61 (quoting Thomas v. City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004)).)  Baker declares that, "In or about March 2003, [he] again confronted Polifka regarding discrimination towards Eley, Andrews and Vargas" and "contacted Nancy Meyers in Human Resources regarding unfair write-ups from Polifka."  (Baker Decl. ¶¶ 58, 61; SDF ¶¶ 63, 64.)  Baker also declares he spoke with "Doug Battista, head of the regional Human Resources department" about "the racial comments and harassment of Eley, Andrews and Vargas."  (Baker Decl. ¶ 61; SDF ¶¶ 63, 64.)  Baker was terminated on April 11, 2003.  (SUF ¶¶ 113-14; SDF ¶ 65.)  Since Baker's termination occurred one month after these complaints, a genuine issue of material fact exists as to causation.

Moreover, Baker has presented sufficient evidence of discrimination to establish a prima facie case.  Baker declares that in a conversation he had with Clowes, Clowes "made clear that, if Baker didn't follow Polifka's orders, [Baker] too could be 'managed out' of the company."[28]  (Baker Decl. ¶ 55; SDF ¶ 60.)  Baker also declares that Polifka told him to find a reason to fire Eley and "made [it] clear that, if [Baker] didn't follow Polifka's orders [to fire

---

[28]  Defendants object based on lack of foundation and hearsay.  Foundation for the conversation has been laid. Defendants' hearsay objection is overruled.  See supra note 24.

Eley and Vargas by any means necessary, he] could be 'managed out' of the company."[29]   (Baker Decl. ¶ 28; SDF ¶ 33.)   Baker also declares he "was notified by Polifka that [Baker] had 'failed' in [his] duty to 'get rid of' Eley and [Baker] would be put on a performance improvement plan ("PIP")."[30]   (Baker Decl. ¶ 48; SDF ¶ 53.)   Later, "Clowes terminated Baker with input from Polifka."   (Pls.' Resp. to Defs.' SUF ¶ 112.)

Aramark argues "there were several separate and independent justifiable bases for Baker's termination."   (Defs.' Mot. at 54.) First, "Baker was falling short of the sales performance expected of him by Clowes."   (Id.; SUF ¶¶ 95-100.)   Baker counters, declaring that "The 'goals' were entirely arbitrary, as [Baker] was consistently outperforming most other district managers."[31]   (Baker Decl. ¶ 49; SDF ¶ 54; Pls.' Resp. to Defs.' SUF ¶ 99.)   Second, Aramark contends "Baker admitted that the action plan he provided to Don Clowes required him to make weekly visits to National Auto Repair, but that

---

[29]   Defendants object based on hearsay, lack of foundation, speculation, and lack of personal knowledge.   Defendants' hearsay objection is overruled.   See supra note 3.   Foundation for the conversation has been laid and is not speculative.   The objections are overruled.

[30]   Defendants object based on hearsay, lack of foundation, speculation, and lack of personal knowledge.   Defendants' hearsay objection is overruled.   See supra note 3.   Foundation is proper, the statement is not speculative, and Baker has personal knowledge of the conversation he had with Polifka.   The objections are overruled.

[31]   Defendants object based on relevance, foundation, speculation, lack of personal knowledge, and impermissible lay opinion.   The statement is relevant to whether company policy was followed inconsistently.   As a former district manager, Baker has laid the foundation for and has sufficient knowledge to render an opinion about his own performance in comparison to his colleagues. The objections are overruled.

he failed to do so."  (Defs.' Mot. at 54; SUF ¶¶ 92-93.)  Baker
rejoins, declaring that the problems National Auto Repair experienced
were "nothing unusual for most of [Aramark's] clients, and [Baker]
followed up appropriately."[32]  (Baker Decl. ¶ 66; Pls.' Resp. to
Defs.' SUF ¶ 93.)  Third, Aramark contends Baker committed "gross
violations of Aramark policy with respect to the [Quality Control
Memorandum ("QCM")] Customer Visitation forms . . . ."  (Defs.' Mot.
at 55.)  But, Ed Hancock, a former Aramark employee, declares that
although QCMs were supposed "to be personally taken out by each
district manager to each client . . . and signed by the person who
signed the original contract, . . . it was all but impossible to do
this and the rule was routinely broken by all district managers."[33]
(Hancock Decl. ¶ 13; SDF ¶ 73.)  Such an inconsistent application of a
policy can be evidence of pretext.  Coszalter, 320 F.3d at 978.  The
foregoing reveals that a genuine issue of material fact exists as to
whether Aramark's asserted reasons for terminating Baker were
pretextual.  Therefore, Aramark's motion for summary judgment on
Baker's retaliation claim is denied.

IV.  Andrews's Age Discrimination Claims

        Aramark moves for summary judgment on Andrews's ADEA claims.
Aramark argues that "summary judgment is compelled where the same

----

[32]    Defendants object based on relevance. The statement is
relevant to whether company policy was followed. The objection is
overruled.

[33]    Defendants object based on speculation, impermissible lay
opinion, lack of foundation, and lack of personal knowledge as to
Baker. However, this statement of fact is based on Hancock's
observations as a former branch manager. The objections are
overruled.

individual both hired and fired the plaintiff." (Defs.' Mot. at 59.)
"[C]laims that employer animus exists in termination but not in hiring
seem irrational.  From the standpoint of the putative discriminator,
it hardly makes sense to hire workers from a group one dislikes . . .
only to fire them once they are on the job." Bradley v. Harcourt,
Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996) (quoting Proud v.
Stone, 945 F.2d 796, 797 (4th Cir. 1991)).  Although Bickerton did not
hire Andrews, Aramark contends "Bickerton's hiring of a co-worker
[Haagensen] who was 3 years older than Andrews should bar Andrews'[s]
claim . . . ." (Defs.' Mot. at 60.)  Since Bickerton hired an
employee from Andrews's protected class only four months before
terminating Andrews, Aramark's motion for summary judgment on
Andrews's age discrimination claims is granted.

V.   Section 1981 Claims

        Defendants also seek summary judgment on Plaintiffs' claims
under 42 U.S.C. § 1981.  "A plaintiff must meet the same standards in
proving a § 1981 claim that he must meet in establishing a disparate
treatment claim under Title VII; that is, he must show discriminatory
intent." E.E.O.C. v. Inland Marine Indus., 729 F.2d 1229, 1233 n.7
(9th Cir. 1984).  "Individual supervisors may be found liable for
damages under [§ 1981] if personally involved in the discriminatory
activity. . . .  The element of personal involvement may be satisfied
by proof that a supervisor had knowledge of the alleged acts of
discrimination and failed to remedy or prevent them." Amin v.
Quad/Graphics, Inc., 929 F. Supp. 73, 78 (N.D.N.Y. 1996).
"[N]egligence does not constitute the 'personal involvement' or
'affirmative link' necessary to support a claim of individual

liability." <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 75 (2d Cir. 2000).  "[A] plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'"  <u>Id.</u> (quoting <u>Allen v. Denver Pub. Sch. Bd.</u>, 928 F.2d 978, 983 (10th Cir. 1991)).

        A.  Eley

        Defendants Aramark and Polifka move for summary judgment on Eley's § 1981 claim.  Polifka argues, "Eley cannot establish Polifka engaged in any <u>affirmative acts</u> of misconduct towards him, as required under Section 1981."  (Defs.' Mot. at 63.)  Eley counters, "[Polifka's] order to Baker to 'fire the nigger' amply demonstrates his discriminatory intent as well as control over Eley's work environment."  (Opp'n at 35; <u>see</u> SDF ¶ 24; <u>Mustafa v. Clark County Sch. Dist.</u>, 157 F.3d 1169, 1180 (9th Cir. 1998) ("Discriminatory remarks are relevant evidence that, along with other evidence, can create a strong inference of intentional discrimination.")  Since a genuine issue of material fact exists on whether Baker was subjected to intentional discrimination, Defendants' motion for summary judgment on Eley's § 1981 claim is denied.

        B.  Baker

        Defendants Aramark, Clowes, and Polifka move for summary judgment on Baker's § 1981 claim.  Clowes argues, "When Clowes terminated Baker he had no knowledge of any purported complaints by Baker of discrimination in the Reno Depot."  (Defs.' Mot. at 64.)  Clowes contends, "Baker's allegations that Clowes failed to remedy the alleged discriminatory conduct of other individuals in the depot is not an affirmative act by Clowes and cannot make Clowes liable under

Section 1981." (Id. (citing Whidbee, 223 F.3d at 75).) Baker
rejoins, "Clowes sanctioned the discrimination of which Baker
complained . . . ." (Opp'n at 80.) Baker declares that he "informed
. . . Clowes . . . about Polifka's [racist] statements and attitude
[and e]ven though Clowes made clear he did not care that Polifka was
making racist statements, [Baker] repeatedly approached him regarding
this matter."[34] (Baker Decl. ¶ 6; SDF ¶ 10.) Baker further declares
that after he "had a conversation with Jeff Black, an executive with
the company, and brought up Polifka's [racist] attitude," "Clowes
notified [Baker] he was not to talk further to Black about
discrimination issues." (Baker Decl. ¶ 15; SDF ¶¶ 19-20.) Baker's
showing is sufficient to create a genuine issue of material fact on
whether Clowes subjected Baker to intentional discrimination.

        Polifka also seeks summary judgment on Baker's § 1981 claim,
arguing, "First, even if Polifka failed to respond to racially
derogatory comments made by other employees, Polifka's failure to act
only constitutes inaction, not an affirmative act as is necessary
under Section 1981." (Defs.' Mot. at 64.) Baker counters that
"Polifka, unconcerned, ignored [his] pleas that something be done
about Bickerton's treatment of Andrews, [saying], 'It's nothing to be
concerned about.'"[35] (Baker Decl. ¶ 9; SDF ¶ 13.) This deliberate

---

[34]    Defendants' hearsay objection is overruled. See supra
note 24.

[35]    Defendants object based on hearsay, speculation, lack of
personal knowledge, lack of foundation, and improper lay opinion.
Defendants' hearsay objection is overruled. See supra note 3.
Baker has personal knowledge of the conversation. As someone who
worked with Polifka for a considerable time, Baker has laid the
foundation and basis for a proper lay opinion about Polifka's
emotional state. The objections are overruled.

inaction rises above mere "negligence." <u>Whidbee</u>, 223 F.3d at 75.
Second, Polifka argues he disciplined Baker "based upon legitimate
non-discriminatory/non-retaliatory reasons." (Defs.' Mot. at 64.)  As
discussed above, a genuine issue of material fact exists as to whether
these reasons were legitimate.  Third, Polifka contends that "it is
undisputed that Clowes alone made the decision to terminate Baker's
employment." (Defs.' Mot. at 65.)  Baker counters that "Polifka
admitted he had the ability to recommend that Baker be terminated
[and] Clowes terminated Baker based on input from Polifka."[36]  (SDF
¶¶ 84-85.)  Since a genuine issue of material fact exists on whether
Polifka and Clowes committed affirmative actions with discriminatory
intent, Defendants' motion for summary judgment on Baker's § 1981
claim is denied.

>        C.  Andrews

Defendants Aramark, Bickerton, and Polifka also seek summary
judgment on Andrews's § 1981 claim, arguing that "Polifka's alleged
statement about not wanting to hear about Bickerton's 'hostile
conduct' . . . shows at most, inaction on Polifka's part, not
<u>affirmative</u> or <u>intentional</u> behavior evincing any racial animus. . . ."
(Defs.' Mot. at 65.)  Polifka also argues that his "advice not to get
'caught up' in the problems of Baker and Eley is entirely proper and
fails to implicate any wrongful conduct." (<u>Id.</u>)  Andrews rejoins that
"Polifka is liable to Andrews for his role in terminating him given

---

[36]  Defendants object based on vagueness of the word
"ability" and relevance. The statements are relevant to whether
Baker's interactions with Polifka led to his termination. The word
"ability" is not vague and Defendants' argument goes to the weight
of the evidence and not its admissibility. The objections are
overruled.

his knowledge of Bickerton's mistreatment of Andrews and use of racial epithets when speaking of him." (Opp'n at 24.) Andrews declares he "spoke several times to Mr. Polifka about Mr. Bickerton's mistreating [him, and that] Polifka did not do anything."[37] (Andrews Decl. ¶ 6; SDF ¶ 100.) Baker also declares that on other occasions, when Baker had gone to speak to Bickerton on Andrews's behalf, Bickerton said 'fuck the nigger' in reference to Andrews and called him 'nigger.'" (Baker Decl. ¶ 37.)

Bickerton argues, "Andrews also fails to demonstrate any affirmative link between his discipline or his termination and Andrews'[s] race." (Defs.' Mot. at 66.) But, Baker declares that "Bickerton found out almost immediately after Andrews had called the company hotline and told [Baker] he would 'fire the nigger.'"[38] (Baker Decl. ¶ 46; SDF ¶ 51.) "Discriminatory remarks are relevant evidence that, along with other evidence, can create a strong inference of intentional discrimination." Mustafa, 157 F.3d at 1180. Therefore, a genuine issue of material fact exists on whether Defendants had discriminatory intent, and Defendants' motion for summary judgment on Andrews's § 1981 claim is denied.

D. Vargas

Defendants Aramark, Velasco, Koch, and Polifka move for summary judgment on Vargas's § 1981 claim. Velasco argues he

---

[37] Defendants object based on lack of foundation and impermissible opinion. Plaintiffs have laid the foundation for the complaints, and the statement that Polifka did nothing is not an opinion. The objections are overruled.

[38] Defendants' hearsay objection is overruled. See supra note 7.

"terminated Vargas'[s] employment because of his dishonesty [and t]here is absolutely no evidence of any discriminatory animus on the part of Velasco, who is himself Hispanic."  (Defs.' Mot. at 67.)  Vargas counters that Velasco "intentionally misrepresented to [Vargas] the reason for his presence at the game."  (Opp'n at 58.)  However, Vargas has presented no evidence that Velasco was "personally involved in the [alleged] discriminatory activity" or "had knowledge of the alleged acts of discrimination and failed to remedy or prevent them."  Amin, 929 F. Supp. at 78.  Since Vargas has not presented a genuine issue of material fact as to Velasco's alleged discriminatory intent, Velasco's motion for summary judgment on Vargas's § 1981 claim is granted.

Defendant Koch also seeks summary judgment on Vargas's § 1981 claim, arguing that "Vargas'[s] adverse employment action was a result of Vargas'[s] poor results and poor attitude, rather than any alleged discriminatory animus on the part of Koch."  (Defs.' Mot. at 69-70.)  Vargas rejoins, "Koch also directly participated in Vargas'[s] unlawful and unjustified demotion" and "threat[ened] to 'manage out' Vargas."  (Opp'n at 59.)  Vargas declares that Koch told Vargas that he "was 'too outspoken' and, if [he] did not stop being too 'outspoken,' [he] would be 'managed out' of the corporation."[39] (Vargas Decl. ¶ 26; SDF ¶ 180.)  Vargas declares that three months later, "Koch summoned [Vargas] into his office and presented [him] with a notice that [he] would be demoted [and] told [Vargas] he was on

---

[39]   Defendants' hearsay objection is overruled.  See supra note 14.

1   [his] way to being 'managed' out of . . . Aramark."[40]  (Vargas Decl.

2   ¶ 32; SDF ¶ 186.)  Since a genuine issue of material fact exists on

3   whether Koch acted with discriminatory intent, Aramark and Koch's

4   motion for summary judgment on Vargas's § 1981 claim is denied.

5         Additionally, Polifka seeks summary judgment on Vargas's

6   § 1981 claim, arguing that his "alleged inaction is not an affirmative

7   act to support individual liability under Section 1981."  (Defs.' Mot.

8   at 67.)  Polifka also argues that he "was not involved in Vargas'[s]

9   alleged demotion in November 2003 or in Vargas'[s] employment

10   termination in May 2004."  Polifka declares that he "supervised Vargas

11   from December 2003 until March 2004."  (SUF ¶ 145.)  Vargas responds

12   that "Polifka is individually liable for the hostile work environment

13   . . . .  Not only did Polifka fail to stop the conduct, he joined in."

14   (Opp'n at 59.)  Vargas declares that he was "called names by [Polifka]

15   including . . . 'Beaner' and 'Vato.'"[41]  (Vargas Decl. ¶ 4; SDF ¶ 158;

16   see also SDF ¶ 159.)  Since this dispute concerns genuine issues of

17   material fact as to whether Polifka acted or failed to act with

18   discriminatory intent based on Vargas's race, Polifka's motion for

19   summary judgment on Vargas's § 1981 claim is denied.

20   VI.  Punitive Damages

21         Lastly, Defendants seek summary judgment on Plaintiffs'

22   punitive damages claim.  "A complaining party may recover punitive

23   damages under [§ 1981] against a respondent . . . if the complaining

24   party demonstrates that the respondent engaged in a discriminatory

25

26       [40]   Defendants' hearsay objection is overruled.  See supra note 3.

27       [41]   Defendants' hearsay objection is overruled.  See supra

28   note 7.

practice or discriminatory practices with malice or with reckless
indifference to the federally protected rights of an aggrieved
individual."  42 U.S.C. § 1981a(b)(1).  "An award of punitive damages
under Title VII is proper where the acts of discrimination giving rise
to liability are willful and egregious, or display reckless
indifference to the plaintiff's federal rights."  <u>Ngo v. Reno Hilton
Resort Corp.</u>, 140 F.3d 1299, 1304 (9th Cir. 1998).  "The requisite
level of recklessness or outrageousness can be inferred from
management's participation in the discriminatory conduct."  <u>Kimzey v.
Wal-Mart Stores, Inc.</u>, 107 F.3d 568, 575 (8th Cir. 1997).

  Defendants argue Plaintiffs "have no evidence . . . to show
that Defendants acted with malice, fraud or oppression."  (Defs.' Mot.
at 70.)  Plaintiffs counter that this case "is about a deliberate
agenda on the parts of all [D]efendants of ridding Aramark of
rabble-rousers Baker, Eley, Vargas, and Andrews–who dared to be
'outspoken' on matters of discrimination . . . .  At every step,
[D]efendants knew their conduct was unlawful."  (Opp'n at 80-81.)
Since a genuine issue of material fact exists on whether defendants
acted or failed to act with reckless indifference, Defendants' motion
for summary judgment on punitive damages is denied.

CONCLUSION

  Aramark's motion for summary judgment on Baker's hostile
racial work environment claim is granted.  Aramark's motion for
summary judgment on Andrews's age discrimination claims is granted.
Defendant Velasco's motion for summary judgment on Vargas's § 1981
claim is granted.  Since no claims remain against Lewis, Defendant

29

1  Lewis is dismissed from the case.  Defendants' motion is otherwise

2  denied.

3           IT IS SO ORDERED.

4  DATED:  August 31, 2005

5                                    /s/ Garland E. Burrell, Jr.
                                     GARLAND E. BURRELL, JR.
6                                    United States District Judge